IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

```
WILLIAM GONZALEZ,                  )
                                   )
              Plaintiff,           )        9:94CV1119
                                   )        9:97CV320
        v.                         )
                                   )
                                   )
THOMAS A. COUGHLIN, III,           )        MEMORANDUM AND ORDER
Commissioner NYS Department of     )
Correctional Services (DOCS),      )
et al.,                            )
                                   )
              Defendants.          )
_____)
```

        This matter is before the Court on defendants' motion
for summary judgment (Filing No. 159).  Having reviewed the
motion, the parties' briefs and evidentiary submissions, and the
applicable law, the Court finds defendants' motion should be
granted in part and denied in part.

                         **STANDARD OF REVIEW**

        On a motion for summary judgment, all reasonable
factual inferences must be drawn in favor of the non-moving
party.  *See, e.g., Savino v. City of New York*, 331 F.3d 63, 71
(2d Cir. 2003)(citing *Anderson v. Liberty Lobby,* 477 U.S. 242,
255 (1986)).  However, to survive a motion for summary judgment,
"the nonmoving party must come forward with 'specific facts
showing that there is a genuine issue for trial.'"  *Matsushita
Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587
(1986)(emphasis omitted)(quoting Fed. R. Civ. P. 56(e))(citation
omitted).  "Conclusory allegations, conjecture, and speculation

. . . are insufficient to create a genuine issue of fact."
*Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)(citation
omitted).  Thus, "statements that are devoid of any specifics,
but replete with conclusions, are insufficient to defeat a
properly supported motion for summary judgment."  *Bickerstaff v.
Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999)(citations
omitted), *cert. denied*, 530 U.S. 1242 (2000).

       "In moving for summary judgment against a party who
will bear the ultimate burden of proof at trial, the movant may
satisfy this burden by pointing to an absence of evidence to
support an essential element of the nonmoving party's claim."
*Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995)
(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).
A party "moving for summary judgment must prevail if the [non-
movant] fails to come forward with enough evidence to create a
genuine factual issue to be tried with respect to an element
essential to its case."  *Allen v. Cuomo,* 100 F.3d 253, 258 (2d
Cir. 1996)(citing *Anderson,* 477 U.S. at 247-48).

## BACKGROUND

       Plaintiff William Gonzalez filed a complaint in the
United States District Court for the Northern District of New
York on September 6, 1994 (Filing No. 1).  Plaintiff named the
following defendants in his original complaint:  Thomas Coughlin,
III; Daniel Senkowski; Donald Selsky; Officer R. Varin;

Lieutenant Carey; and Ms. Matos, also known as Ms. Deleon.
Plaintiff brought his action pursuant to 42 U.S.C. § 1983,
alleging he was deprived of procedural due process in connection
with a Tier III disciplinary hearing that took place on August
19-23, 1991.  After the Tier III hearing, plaintiff was sentenced
to 180 days in keeplock confinement.  He served 163 days before
the Tier III hearing was administratively reversed and
plaintiff's record was expunged.  In his complaint, plaintiff
also stated that he intended to file another § 1983 action based
on an assault on the plaintiff at CCF on February 24, 1994, and
based on legal property of plaintiff's that was allegedly lost
intentionally by prison official's during plaintiff's transfer to
another prison.

          The defendants filed a motion to dismiss plaintiff's
complaint (Filing No. 13).  On May 6, 1996, the district court
adopted the magistrate judge's report and recommendation and
granted defendants' motion to dismiss the complaint on the ground
that plaintiff's 163 day keeplock confinement did not rise to the
level of a protected liberty interest (Filing No. 32).  The
plaintiff appealed the dismissal to the Second Circuit Court of
Appeals.  The Second Circuit reversed and remanded the case to
the district court to make factual determinations as to the
actual conditions of plaintiff's keeplock confinement pursuant to
*Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Plaintiff filed an

-3-

amended complaint on July 31, 2000, naming thirty-four defendants and asserting several claims (Filing No. 59).

Plaintiff filed a separate § 1983 action on March 10, 1997 (Filing No. 1 in 9:97CV320).  However, because plaintiff delivered his complaint to prison officials to forward to the Court on February 24, 1997, the complaint will be deemed filed on February 24, 1997 (Filing No. 4 in 9:97CV320).  *See Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1993)(holding a pro se prisoner's civil complaint was deemed filed the day the complaint was delivered to prison officials).  The district court found that the complaint failed to comply with Fed. R. Civ. P. 8(a) and 10(b) and ordered plaintiff to amend his complaint or the case would be dismissed. Plaintiff filed an amended complaint which added more defendants and claims and still failed to comply with the federal rules. The Court ordered the amended complaint stricken and gave plaintiff one more opportunity to amend his complaint within 30 days.  When plaintiff failed to do so, the district court dismissed his complaint.  Plaintiff's case was reinstated after he moved to vacate the judgment and appealed to the Second Circuit.  On July 31, 2000, plaintiff filed the same amended complaint (Filing No. 34 in 9:97CV320) that he had filed in 9:94CV1119.  The district court entered an order to consolidate the two cases on August 10, 2000.

-4-

Defendants move for summary judgment on the following grounds: (1) plaintiff's due process claims should be dismissed because plaintiff's keeplock confinement did not rise to the level of a protected liberty interest; (2) various claims in the amended complaint should be dismissed as time-barred because they do not relate back to the original complaints; (3) plaintiff's claims based on inadequate medical treatment should be dismissed because they are without merit; and (4) defendants Rodas, Scales, Fein, Koenigsmann, Zwillinger, Bliden, and Schneider are entitled to qualified immunity.

**DISCUSSION**

**I. Due Process Claims**

Plaintiff alleges he was denied procedural due process at a Tier III disciplinary hearing that took place on August 19-23, 1991.  To state a claim for denial of due process, "a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest." *Cruz v. Gomez*, 202 F.3d 593 (2d Cir. 2000).  "Disciplinary confinement does not deprive an inmate of a liberty interest unless the confinement imposes [an] 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Gonzalez v. Coughlin*, No. 96-2494, 1998 WL 2410, at *1 (2d Cir. Jan. 6, 1998)(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

-5-

Plaintiff claims his time keeplock confinement was an atypical and significant hardship for the following reasons: "(a) plaintiff was segregated from the general population for eating, recreation and all other group activities; (b) plaintiff was confined to his cell for 23 hours per day; (c) plaintiff lost privileges including commissary, phone, FRP, law library access, religious services attendance and bathhouse privileges; and (d) plaintiff was subjected to the violent and dangerous conditions then present in Lower Block F" (Filing No. 59 ("Amended Complaint") ¶ 22). In addition, plaintiff claims Lower F Block officers used the loud speaker at "extreme volumes in order to torture plaintiff" resulting in hearing loss (Amended Complaint ¶ 37).

Material issues of fact preclude summary judgment on the issue of whether plaintiff's keeplock confinement imposed an "atypical and significant hardship" such that plaintiff was deprived of a liberty interest without due process. Thus, defendants' summary judgment will be denied with respect to plaintiff's due process claims.

## II.  Statue of Limitations

Defendants claim various claims in the amended complaint should be dismissed because they were untimely at the time the amended complaint was filed and they do not relate back to the original complaint. The statute of limitations for claims

-6-

under § 1983 is a state's statute of limitations for general personal injuries. *Owens v. Okure*, 488 U.S. 235, 237, 251 (1989). New York's statute of limitations for personal injury claims is three years. N.Y. Civ. Prac. Law § 214(5). The amended complaint was filed on July 31, 2000; thus, any claim that accrued prior to July 31, 1997, that was not timely asserted in a prior complaint and that does not relate back to a original complaint is time-barred. This inquiry is complicated by the fact that there are two original complaints that must be considered: (1) the original complaint in 9:94CV1119 filed on September 6, 1994; and (2) the original complaint in 9:97CV320 filed on March 10, 1997, and submitted to prison officials on February 24, 1997.[1]

The Court will examine each of the claims in the amended complaint separately to determine when they were first asserted. First, plaintiff asserts a denial of due process claim against defendants Coughlin, Selsky, Senkowski, Varin, Carey and

---

[1] Defendants allege that both the original complaint in 9:97CV320 (Filing No. 1) and the first attempt at an amended complaint in 9:97CV320 (Filing No. 15) were stricken by the Court for failure to comply with the Federal Rules of Civil Procedure. Defendants are correct that the amended complaint (Filing No. 15) was ordered stricken in an order filed on June 30, 1998 (Filing No. 18); however, after a careful review of the docket, the Court can find no order striking the original complaint (Filing No. 1). Therefore, to determine which of the claims in the amended complaint (Filing No. 34 in 9:97CV320; No. 59 in 9:94CV1119) were timely asserted, the Court must refer to the original complaint in 9:97CV320.

Matos a/k/a Deleon, claiming that while an inmate at Clinton
Correctional Facility, plaintiff was denied due process at
plaintiff's August 19-23, 1991, Tier III disciplinary hearing,
which resulted in plaintiff serving 163 days in keeplock
confinement from August 23, 1991 through January 30, 1992, and
was subsequently administratively reversed (Filing No. 59 in
9:94CV1119; Filing No. 34 in 9:94CV1119 ("Amended Complaint"
¶¶ 6-27, 29-33).  Defendants concede that plaintiff's due process
claims relating to the disciplinary hearing are timely as they
were first asserted in the original complaint in 9:94CV119.

        Second, plaintiff claims he suffered hearing loss as a
result of defendant Uhler's misuse of the loudspeaker during
plaintiff's keeplock confinement in violation of the Eighth
Amendment (Amended Complaint ¶¶ 34-41).  While Uhler's alleged
misuse of the loudspeaker occurred during plaintiff's keeplock
confinement from August 23, 1991, through January 30, 1992,
plaintiff alleges he was not diagnosed with hearing loss until
July 22, 1999.  Thus, there are material issues of fact
precluding summary judgment on the timeliness of this claim.

        Third, plaintiff claims defendant Bezio assaulted him
on October 29, 1991, in the bath house and subsequently denied
him shower privileges, which resulted in a skin rash, in
retaliation for plaintiff pursuing his legal and administrative
remedies (Amended Complaint ¶¶ 42-49).  The Court will grant

-8-

defendants' summary judgment motion with respect to these claims because plaintiff failed to raise them within the three-year statute of limitations, and the Court finds they do not relate back to the original complaint nor does the continuing violation exception apply.

Fourth, plaintiff claims that while an inmate at Clinton Correctional Facility, he was assaulted by Muslim inmate Letterlough on February 24, 1994, while he was being transported to keeplock confinement following plaintiff's alleged assault of another Muslim inmate, Green, earlier that day.  Plaintiff claims that defendants Ricks, Hewston, Bolak, Maynard, Uhler, Longtin, Senecal, Pecore and Bousquet acted unreasonably and intentionally, or in the alternative, with reckless disregard of plaintiff's constitutional rights and failed to protect plaintiff from a known risk of assault (*Id.* ¶¶ 50-78).  Plaintiff raised this claim in his original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 24-81).  While that complaint was not filed until March 10, 1997, there is evidence that plaintiff submitted the complaint to prison officials on February 24, 1997, to be forwarded to the Court (Filing No. 6 in 9:97CV320).  Based on the reasoning of *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1993), which held a pro se prisoner's civil complaint was deemed filed the day the complaint was delivered to prison officials, the Court finds defendants' summary judgment motion on statute of limitations

-9-

grounds will be denied with respect to this claim.  In addition, the Court will not address defendants' argument that this claim is barred by the principles of res judicata and collateral estoppel because that argument was raised for the first time in defendants' reply brief and did not give plaintiff a chance to respond.  *See In re Dobbs*, 227 Fed. Appx. 63, 64 (2d Cir. 2007) (stating "we think that it was entirely proper for the District Court to decline to consider [an] argument, raised for the first time in [the] reply brief"); *see also Playboy Enterprises, Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y. 1997)(stating "[a]rguments made for the first time in a reply brief need not be considered by a court").

Fifth, plaintiff claims that while an inmate at Green Haven Correctional Facility, defendants Rodas and Scales were deliberately indifferent to plaintiff's medical needs when they knew he had Hepatitis C on September 19, 1997, but failed to take steps to notify him of his condition and to ensure proper treatment.  Plaintiff learned of his test result on November 27, 1998 (Amended Complaint ¶¶ 79-81, 87-89, 93-95).  Plaintiff also alleges defendants Fein, Koenigsmann, Zwillinger, Bliden, and Schneider were deliberately indifferent to plaintiff's medical needs when they knew of plaintiff's hearing loss and failed to take steps to ensure proper treatment and to transfer him to an appropriate cell block (*Id.* ¶¶ 79, 82-86, 90-94, 96).  Plaintiff

was diagnosed with hearing loss on July 22, 1999.  Plaintiff's deliberate indifference claims based on denial of medical care were timely asserted in the amended complaint as they accrued after July 31, 1997.

Next, plaintiff asserts several claims of retaliation. Plaintiff alleges the defendants retaliated against him in various ways because he exercised his right to file grievances for inappropriate conduct by prison officials (*Id.* ¶¶ 167- 172). First, plaintiff alleges defendant Bezio denied him access to the showers which resulted in a skin rash and filed a false misbehavior report against plaintiff in retaliation for plaintiff filing complaints against Bezio (*Id.* ¶¶ 99-105).  The claims against Bezio were not asserted within the three-year statute of limitations.  In addition, the Court finds these claims do not relate back to the original complaints, and the continuing violation exception does not apply; thus, defendants' summary judgment motion will be granted with respect to those claims.

Second, plaintiff alleges defendants Senkowski, Babbie, Ricks, and Campbell permitted plaintiff to be transferred from Clinton to Great Meadow in April 1994 despite having written notice that plaintiff was concerned about being in the same facility as his enemy, inmate Gloster (*Id.* ¶¶ 106-115).  This claim was timely asserted in the original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 104-123).

-11-

Third, plaintiff alleges that during his transfer to Auburn Correctional Facility on April 30, 1994, a bag containing his legal documents and research was intentionally misplaced and never recovered (*Id.* ¶¶ 116-117).  This claim was timely asserted in the original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 124-130).

Fourth, plaintiff alleges that in 1995, defendants Burns and Lupo sought to stop plaintiff from assisting other inmates and to have plaintiff fired from his law clerk position, defendant Lupo filed a false misbehavior report against plaintiff, defendant Nelson approved the false misbehavior report, and defendant Duncan acted to make plaintiff ineligible to work in the law library, even though he knew the misbehavior report was false (*Id.* ¶¶ 118-129).  These claims were timely asserted in the original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 176-210).

Fifth, plaintiff claims that during April 1996, defendants Stanton and Ashby filed a false misbehavior report, which resulted in defendant Ginnerty terminating plaintiff from the Aggression Resolution Treatment ("ART") program, and defendant Nelson affirmed the decision to terminate plaintiff from the program (*Id.* ¶¶ 130-143).  These claims were timely asserted in the original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 211-218).

Sixth, plaintiff claims that while an inmate at Auburn between August and September 1996, he had an altercation with defendant Polkavich in the "Wood Z Shop," defendant Carberry told Polkavich that plaintiff filed numerous grievances with the intent to instigate an altercation, defendant Polkavich filed a false mental hygiene unit referral on behalf of plaintiff, defendant Ashby dismissed plaintiff's grievances, and defendant Duncan stated the false mental hygiene referral was not retaliatory (*Id*. ¶¶ 144-153).  These claims were timely asserted in the original complaint in 9:97CV320 (Filing No. 1 in 9:97CV320 at ¶¶ 219-239).

Seventh, plaintiff alleges his legal materials were intentionally misplaced during transport to Green Haven and were not returned until February 5, 1997 (*Id.* ¶¶ 154).  This claim was not asserted in the original complaint in 9:97CV320, and it was not timely when asserted in the amended complaint; thus the defendants' summary judgment on statute of limitations grounds will be granted with respect to this claim.

Eighth, plaintiff alleges that while an inmate at Green Haven, defendants Rodas and/or Scales learned plaintiff had Hepatitis C in September 1997 but failed to notify defendant until November 1998, and defendants Fein, Koenigsmann, Zwillinger, Bliden and Schneider failed to properly treat

plaintiff for hearing loss (*Id.* ¶¶ 155-166).  These claims were timely asserted in the amended complaint.

In summary, the defendants' motion for summary judgment on statute of limitations grounds is granted with respect to plaintiff's claims for assault and retaliation against defendant Bezio and with respect to plaintiff's claim of lost property during transfer to Green Haven.  The defendants' motion for summary judgment on statute of limitations grounds will be denied in all other respects.

## III. Medical Care Claims

In order to prevail on an Eighth Amendment claim based on prison medical care, a plaintiff must prove the defendants acted with deliberate indifference to plaintiff's serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  The "serious medical need" prong is satisfied where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104-05.  To prove a violation of the Eighth

-14-

Amendment, a plaintiff must satisfy both objective and subjective inquiries. *See Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003). "[A]n inmate must show (1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Id.* An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Further, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*

Here, plaintiff first alleges that defendants Rodas and Scales were deliberately indifferent to plaintiff's serious medical need by failing to timely notify him that he had Hepatitis C. Plaintiff tested positive for Hepatitis C in September 1997 (Filing No. 159, Ex. 19 ("Koenigsmann Decl." ¶ 5).

Plaintiff refused an exam with Dr. Scales on October 16, 1997
(Filing Nos. 20-26 ("Medical Records") at 6, 196).  He was not
seen again by medical staff until November 1998, at which point
he requested the results of his Hepatitis C blood test
(Koenigsmann Decl. ¶¶ 8-9).  On November 27, 1998, plaintiff was
seen by defendant Rodas, a physician's assistant, who indicated
that plaintiff was asymptomatic and that his Liver Function Tests
("LFT") were normal (Medical Records at 33; Koenigsmann ¶ 10).
Plaintiff refused blood work on three occasions in December 1998
before submitting blood in January 1999 (Medical Records at 26,
30, 32).  On February 1, 1999, plaintiff was informed that due to
his normal LFT results, he was not a candidate for treatment
under Department of Correctional Services ("DOCS") guidelines
(*Id.* at 26).  Plaintiff had gall bladder surgery and a liver
biopsy on August 13, 2001 (Medical Records at 257; Koenigsmann
Decl. ¶ 20).  On December 19, 2001, Dr. Rush noted mild liver
disease in plaintiff but stated that no treatment was indicated
for Hepatitis C because of the very slow progression of the
disease (Medical Records at 309; Koenigsmann Decl. ¶ 24).

        The unrefuted evidence indicates that any delay in
notifying plaintiff of his positive Hepatitis C results was
primarily due to plaintiff's own actions, specifically his
refusal of an exam by Dr. Scales on October 16, 1997, and not
returning for medical care until November 1998.  In addition,

-16-

four years after plaintiff first tested positive for Hepatitis C and three years after he learned of his diagnosis, plaintiff did not require treatment due to the slow progression of his disease. The Court finds there is no evidence that defendants were deliberately indifferent to plaintiff's serious medical need; thus, defendants' summary judgment is granted with respect to this claim.

Next, plaintiff claims that defendants Fein, Koenigsmann, Zwillinger, Bliden and Schneider were deliberately indifferent to plaintiff's serious medical by failing to properly treat plaintiff's hearing loss.  On September 1, 1991, plaintiff complained about noise from the loudspeaker and was given cotton batting for his ears (Medical Records at 74).  There is no indication in plaintiff's medical records that he complained of hearing loss or ear pain again until July 1999 (Medical Records at 22; Koenigsmann Decl. ¶¶ 28-29).

Plaintiff was seen by an audiologist on July 22, 1999, who indicated that plaintiff had elevated middle ear pressure in his right ear consistent with eustacian tube dysfunction ("ETD") and significant hearing loss in high frequency consistent with noise exposure in the left ear (Medical Records at 92; Koenigsmann Decl. ¶ 30).  Plaintiff requested to be fitted for a hearing aid on August 6, 1999, and again on January 10, 2000 (Medical Records at 20, 21).  On January 18, 2000, a medical

-17-

provider saw plaintiff and requested a consult with an Ear, Nose and Throat doctor to determine whether plaintiff needed a hearing aid and should be placed in a quiet block (Medical Records at 20, 91; Koenigsmann Decl. ¶ 34).  Ear, Nose and Throat specialist, Dr. Tran, saw plaintiff on February 18, 2000, and recommended a hearing aid evaluation and indicated plaintiff may benefit from being placed in a quiet block (Medical Records at 91; Koenigsmann Decl. ¶ 35).  Dr. Koenigsmann noted on February 28, 2000, that there was no need to move plaintiff to a different cell at that time (Medical Records at 18).  Plaintiff was seen by an audiologist on March 6, 2000, who indicated plaintiff was cleared to proceed with the hearing aid (Medical Records at 90; Koenigsmann Decl. ¶ 37).

On April 4, 2000, plaintiff was seen at an audiology clinic for a hearing aid fitting; however, the medical provider noted that plaintiff became uncooperative and declined to proceed with the hearing aid fitting (Medical Records at 88; Koenigsmann Decl. ¶ 38).  On April 20, 2000, plaintiff again complained of pain in his ears (Medical Records at 17).  Plaintiff was scheduled to see an audiologist Serhan on April 25, 2000; however, plaintiff refused to see Serhan (*Id.* at 86, 193).  Plaintiff returned to Dr. Fein on May 22, 2000, complaining that he had not received ear plugs and complaining of ear pain and noise sensitivity (*Id.* at 14).  Plaintiff was given three pairs

-18-

of ear plugs on July 18, 2000 (Medical Records at 14; Koenigsmann
Decl. ¶ 43).

On August 22, 2000, plaintiff was seen by Dr. Fein,
claiming his hearing was getting worse (Medical Records at 9,
80).  On September 18, 2000, plaintiff complained of anxiety and
threatened "harm to self if not moved from his present location
which he states is noisy and causes him harm" (*Id.* at 7).
Plaintiff was moved to a different cell, and Dr. Fein requested a
psychiatric consult (*Id.* at 6).  Plaintiff was seen by another
audiologist on October 26, 2000 (*Id.* at 112).  She noted mild
high-frequency sensorineural loss in the right ear and mild to
profound sensorineural loss in the left ear (*Id.*).  She noted
that plaintiff's word recognition was excellent in the right ear
and fair in the left ear (*Id.*).  On November 17, 2000, a Ear,
Nose and Throat specialist recommended plaintiff undergo an MRI;
however, this was not done because plaintiff had pellets in his
head (Koenigsmann Decl. ¶¶ 51, 52).  Plaintiff underwent a CT
scan on September 5, 2001, which demonstrated normal results, and
another on February 15, 2002, which indicated no acute findings
(*Id.* ¶¶ 55, 59).

Plaintiff failed to respond specifically to defendants'
motion for summary judgment with respect to plaintiff's claims
relating to treatment of his hearing loss.  The unrefuted
evidence demonstrates that plaintiff was evaluated and treated

-19-

for hearing loss and ear pain complaints on numerous occasions.
He was offered cotton batting and earplugs to deal with the noise
he complained of in his cell.  He was also given the opportunity
to be fitted for hearing aids; however, plaintiff refused to
proceed with the hearing aid fitting on two occasions and refused
to see various medical providers.  Any delays in plaintiff's
treatment for hearing loss were primarily caused by plaintiff's
own actions and refusal to cooperate with medical providers.
There is no evidence that defendants were deliberately
indifferent to plaintiff's medical need; thus, defendants' motion
for summary judgment will be granted with respect to this claim.

## IV.  Qualified Immunity

"The first step in a qualified immunity inquiry is to
determine whether the alleged facts demonstrate that a defendant
violated a constitutional right.  If the allegations show that a
defendant violated a constitutional right, the next step is to
determine whether that right was clearly established at the time
of the challenged action -- that is, 'whether it would be clear
to a reasonable officer that his conduct was unlawful in the
situation he confronted.'  A defendant will be entitled to
qualified immunity if either (1) his actions did not violate
clearly established law or (2) it was objectively reasonable for
him to believe that his actions did not violate clearly

established law." *Moore v. Andreno*, 505 F.3d 203, 208 (2d Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007)).

Because the Court granted defendants' motion for summary judgment on plaintiff's medical care claims, it is unnecessary to address defendants' qualified immunity argument. Accordingly,

IT IS ORDERED that defendants' motion for summary judgment (Filing No. 159) is granted in part and denied in part as follows:

1)   Defendants' motion for summary judgment with respect to the due process claims is denied;

2)   Defendants' motion for summary judgment on statute of limitations grounds is granted with respect to the claims against defendant Bezio for assault and retaliation and with respect to the claim that plaintiff's property was intentionally lost during the transfer to the Green Haven facility.  Defendant Bezio is dismissed as a defendant in this action.  Defendants' motion for summary judgment on statute of limitations grounds is denied in all other respects; and

3)    Defendants' motion for summary judgment is granted with respect to plaintiff's deliberate indifference claims based on medical care.

DATED this 9th day of June, 2008.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court